UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 6:15-cr-83-Orl-31 KRS
                                      18 U.S.C. § 371
STEVEN G. MATSON                      18 U.S.C. § 982(a)(2)(A) - Forfeiture

FILED 2015 APR -9 PH 3:38 US DISTRICT COURT MIDDLE DISTRICT OF FLORIDA ORLANDO, FLORIDA

## INFORMATION

The United States Attorney charges:

### COUNT ONE

#### A. Introduction

1. A HUD-1 Settlement Statement is a United States Department of Housing and Urban Development form, which is universally used in closings of residential properties in the United States. A HUD-1 is used to identify and allocate the various expenses associated with the sale of residential real estate between the buyer and the seller of the property. A HUD-1 also reports the amount of cash to be paid to the seller as net proceeds.

2. A Uniform Residential Loan Application, commonly referred to as a mortgage loan application or a Form 1003, is a universally used mortgage application developed by federal government agencies, and is used by lending institutions in the mortgage loan approval process. The Form 1003 requires the buyer/borrower to submit a financial history, including employment information, monthly income, assets and liabilities, and the specific details of the residential

real estate transaction.

3. Mortgage companies facilitate the mortgage loan process by assembling information and documentation used by lending institutions in connection with lending institutions' loan approval process for residential real estate loans. Mortgage companies are tasked with ensuring that the information on Forms 1003 is true, correct, and free of any misrepresentation, procuring property appraisals, securing verification of employment letters and, if necessary, securing escrow letters reflecting that the buyer/borrower has deposited the necessary funds into an escrow account to close the real estate sale transaction.

4. Purchase and Sale Agreements are written contracts used in the sale of real estate and set forth the terms of the real estate transaction, including identifying the property to be sold, the seller of the property, the buyer of the property, the purchase price, and other conditions of the sale.

5. The term "closing" or "settlement" is used in the real estate industry to refer to the legal transfer of real estate from seller to buyer.

6. The term "lender" is used in this Information to refer to institutions that extended mortgage loans to fund the purchases of properties involved in the defendant's fraudulent real estate scheme.

7. The Federal Deposit Insurance Corporation ("FDIC") was an agency of the United States that insured member financial institutions against loss to prevent catastrophic collapse of the insured financial institutions.

8.  Washington Mutual Bank, FA, Wells Fargo Bank, NA, JP Morgan Bank, Bank of New York, and Deutsche Bank Trust Company Americas were financial institutions whose accounts were insured by the FDIC (hereinafter collectively referred to as "federally insured banks"). Part of the business of these federally insured banks was to make loans to individual borrowers, which loans were secured through an interest in residential real estate, commonly known as a mortgage. The federally insured banks also refinanced existing loans, made supplemental home-equity loans secured through mortgages on residential real estate, and purchased existing home loans from financial institutions.

9.  In order to decide whether to make such a loan to a residential purchaser/borrower, or in what amount, or with what terms, these federally insured banks and private mortgage lenders generally required that:

(a)  the true purchaser/borrower be disclosed, as well as any familial relationships between and among the parties to the transactions;

(b)  the purchaser/borrower provide information to establish the actual purchase/sale price of the property to be mortgaged;

(c)  the purchaser/borrower state the intended use of the mortgaged property, that is, its use as a (i) primary residence, (ii) secondary residence, or (iii) investment property;

(d)  the purchaser/borrower provide employment and financial information to establish credit worthiness and an ability to repay the loan, usually

on a standardized form called the "Uniform Residential Loan Application" (commonly referred to as the "URLA" or "Form 1003");

(e) the purchaser/borrower contribute equity (also referred to as a down-payment) towards the purchase price of the property and to identify the source of the equity funds; and,

(f) the loan proceeds be distributed appropriately and in accordance with the terms and conditions of the loan, the lender's closing instructions, and as represented on the settlement statement, usually on a standardized form called the "Settlement Statement" (commonly referred to as the "HUD-1").

10. Wire transfers of funds borrowed from federally insured financial institutions that were used to purchase real estate and fund second mortgages on real estate were routed through the Federal Reserve Banking System and cleared through Federal Reserve operations center in East Rutherford, New Jersey.

### B. THE AGREEMENT

11. Between in or around January 2006, and through a date unknown to the United States, in Volusia County, Florida, in the Middle District of Florida, and elsewhere,

**STEVEN G. MATSON**

the defendant herein, did knowingly and willfully combine, conspire, confederate, and agree with other persons both known and unknown to the Grand Jury to

commit the following offense against the United States, which affected financial institutions:

> to knowingly execute, by means of a wire or radio communication in interstate or foreign commerce, a scheme and artifice to defraud financial institutions (banks) and private mortgage lenders, and to obtain money or property from financial institutions and private mortgage lenders through materially false and fraudulent pretenses, representations and promises, in violation of Title 18, United States Code, Section 1343.

### C. **MANNER AND MEANS OF THE CONSPIRACY**

12. It was part of the conspiracy that the defendant and others would and did purchase, for investment purposes, residential real estate in Volusia County and elsewhere, which purchase was always accomplished through financing obtained from a federally insured bank or private mortgage lender.

13. It was further a part of the conspiracy that the defendant and others would and did employ and use false and fraudulent means and methods in order to obtain financing from federally insured banks and private mortgage lenders to purchase said property. For the purpose of obtaining a loan, or a loan of a certain amount, or a loan with certain terms, the defendant and others would and did knowingly make, and cause to be made, false and fraudulent statements, pretenses, representations and promises, and would and did willfully conceal the truth, about the following material matters, among others:

    (a) the true purchaser/borrower in the transaction;

(b) the relationship between and among the parties to the transaction;

(c) the actual purchase/sale price of the property;

(d) the intended use of the property by the purchaser/borrower;

(e) the employment of the purchaser/borrower;

(f) the income of the purchaser/borrower;

(g) the assets of the purchaser/borrower;

(h) the liabilities of the purchaser/borrower;

(i) the amount of equity contributed to the purchase of the property by the purchaser/borrower;

(j) the source of equity contributed to the purchase of the property by the purchaser/borrower; and,

(k) the actual disposition of the loan proceeds disbursed at the settlement/closing.

14. It was further a part of the conspiracy that after having purchased residential estate, members of the conspiracy would and did sometimes apply for and obtain refinancing or home-equity loans or lines of credit ("HELOCs") secured through first or second mortgages from federally insured banks and private mortgage lenders using the same false and fraudulent means and methods described above.

15. It was further a part of the conspiracy that the defendant and others would and did divide and distribute among themselves the loan proceeds issued by the federally insured banks and private mortgage lenders in accordance with

the purposes and objectives of the conspiratorial agreement, and for their personal use and benefit, and from time to time not in accordance with the purposes represented in the loan applications or the terms and conditions set forth in the Settlement Statements presented to the federally insured banks and private mortgage lenders.

16. It was further a part of the conspiracy that individuals with good credit histories were told that the high mortgage payments would be paid with rental income from renters and that substantial improvements would be made to the properties so that the properties could be sold at a substantial profit.

17. It was further a part of the conspiracy that members of the conspiracy would and did fail to find permanent renters for some of the homes and when they did find renters, would not use the rental income to pay the existing mortgages on the homes.

18. It was further a part of the conspiracy that members of the conspiracy would and did fail to make substantial improvements or additions to the homes that were fraudulently purchased.

19. It was further a part of the conspiracy that most of the closings for the properties would be and were conducted at the same title agency and the loan applications were processed by the same mortgage broker.

20. It was further a part of the conspiracy that members of the conspiracy would and did falsely verify employment and income history with lenders during the verification process.

21. It was further a part of the conspiracy that the defendant and others would and did perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the purposes and objectives of, and the acts done in furtherance of, said conspiracy.

## OVERT ACTS

22. In furtherance of the conspiracy, and to effectuate its objectives, the following overt acts, among others, were committed within the Middle District of Florida, and elsewhere:

On or about the following date, in Volusia County, Florida, in the Middle District of Florida, and elsewhere, the following wire transfer of funds was made by defendant **STEVEN G. MATSON** or at his direction:

| Date of Wire | Description of Property | Amount of Wire | Origination of Wire |
|---|---|---|---|
| 10-31-2006 | 4249 S. Atlantic Drive, Wilbur-By-The-Sea, Florida | $2,114,765 | Washington Mutual Bank Florence, S.C. |

All in violation of Title 18, United States Code, Section 371.

## **FORFEITURE**

1.  The allegations in Count One of this Information are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to the provisions of Title 18, United States Code, Section 982(a)(2)(A).

2.  Upon conviction, the defendant, **STEVEN G. MATSON**, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any and all right, title, and interest he may have in any property constituting, or derived from, proceeds the person obtained directly or indirectly, as a result of such violations.

3.  If any of the property described above, as a result of any act or omission of the defendant:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

                                      A. LEE BENTLEY, III
                                      United States Attorney

By: _____
      Shawn P. Napier
      Assistant United States Attorney

By: _____
      Carlos A. Perez-Irizarry
      Assistant United States Attorney
      Chief, Orlando Division